239 So.2d 763

**CENTRAL OF GEORGIA RAILROAD COMPANY, a Corporation,**

v.

**Franklin Eugene RUSH.**

**6 Div. 480.**

Supreme Court of Alabama.

Sept. 3, 1970.

Rehearing Denied Oct. 8, 1970.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellant.

Hare, Wynn, Newell & Newton, Birmingham, for appellee.

MERRILL, Justice.

This is an appeal by the defendant railroad company from a judgment of $18,-000.00 in a suit brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The sole issue is whether the trial court erred in refusing to give the affirmative charge as requested by the defendant.

The single count, as amended, which went to the jury charged that while the appellee was "acting within the line and scope of his employment by the defendants * * * a firearm he was carrying discharged and injured and damaged the plaintiff." The appellee charged that the railroad was negligent in whole or in part in requiring him (1) to work in an inadequately lighted area; (2) in that he was put to work in a crowded place; (3) in that he was assigned work to do with insufficient manpower or machinery; (4) in that there was a safer way to do the work assigned. The complaint averred that the plaintiff was required "to work in a place and under conditions of such danger and hazard that it became reasonable to carry for his own safety * * * a firearm, which * * * accidentally discharged."

Where the affirmative charge is requested, the entire evidence must be viewed in light most favorable to the opponent, and where this is done and a reasonable inference may be drawn adverse to the party requesting the charge, the charge is properly refused. Atlantic Coast Line R. Co. v. McMoy, 261 Ala. 66, 73 So.2d 85 (1954); Birmingham Southern Railroad Co. v. Ball, 271 Ala. 563, 126 So.2d 206 (1961).

The Federal Employers' Liability Act (F.E.L.A.) provides, in pertinent part:

"Every common carrier by railroad * * * shall be liable in damages to any person suffering injury *while he is employed* by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, * * *." 45 U.S.C.A. § 51. (Emphasis supplied).

The evidence showed that the plaintiff-appellee, Rush, was employed by the Central of Georgia Railway Company as a trainman, whose duties included flagging, switching, braking or other duties on a train, having been employed by the defendant beginning in 1955. He was a flagman at the time the accident occurred on October 24, 1961. A flagman is also a trainman but the flagman rides at the rear of the train. According to the Operating and Maintenance Rules, § 872, of the Central of Georgia Railway Co., a trainman's duties include assisting the conductor "in switching their trains, inspecting cars, seeing that handbrakes are released before

moving, loading and unloading freight and all things necessary for the safe, prompt movement of their train."

On the day of the accident, the appellee had returned from a trip to Andalusia, Alabama, on board the train on which he was working, to Union Springs, Alabama, at about 6:00 or 6:30 P.M. It being near quitting time, he left the train, went to his car, started the engine so that it could be warming up, and got a small derringer pistol from the glove compartment. He then walked toward a nearby tool shed to wait for the engine to pull up. On the way, he showed the pistol to the conductor who examined it and returned it to the plaintiff. Rush testified that the safety was on; that he then put the pistol into his flannel shirt pocket which he buttoned, and proceeded on to the tool shed. He testified that it was dark. When the diesel pulled up, he climbed onto the engine to begin unloading some rerailing equipment which had been placed on a 30-inch wide catwalk surrounding the engine. Another employee was also on the catwalk to help unload a hook and cable. Rush had a lantern hanging on one arm. As he bent over to pick up a forty or fifty pound hook, he bumped the side of the diesel, the lantern slipped down his arm, and when he grabbed for it, the pistol fell from his pocket. It discharged, sending metal fragments into Rush's eyes. The pistol was loaded with "rat shot."

Evidence was introduced to show that some railroad employees had carried guns for their self protection against hoboes and snakes. There was no evidence that it was a custom to carry guns. The plaintiff testified that he could not remember ever before having carried a gun in his shirt pocket. He did not have a permit for the gun, and had owned it for two weeks.

In brief, appellant does not argue the question of negligence. This is not a critical statement because there probably was some evidence or a conflict in the evidence as to whether the place appellee was working was adequately lighted, whether he should have had to carry the lantern on his arm when he needed both arms to do the lifting job, whether better equipment or more manpower was customary to do the job and whether the negligence of another workman in prematurely throwing one end of the cable off the engine put appellee in a precarious position.

Appellant presents an ingenious argument built around a correct statement. The second sentence in the argument section of the brief reads: "In order for the appellee to recover, he must prove that his injuries arose out of his employment." After that statement, our case of Dallas Manufacturing Co. v. Kennemer, 243 Ala. 42, 8 So. 2d 519, and similar Workmen's Compensation cases from other jurisdictions are cited in support of its argument. We note that a case closer in point is Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666. There, the employee was accidentally shot by the young son of his immediate superior with a revolver which the employee placed on the desk where the child's toy pistol had been laid. We held that the employee was killed as the result of an accident which "arose out of and in the course of his employment."

In Workmen's Compensation cases, the personal injury or death must be "caused to an employee by an accident *arising out of and in the course of his employment,* * * *." (Emphasis supplied). Tit. 26, § 253, Code 1940.

■ ■ The above emphasized words have become words of art and have been construed many times in Workmen's Compensation cases. No such words appear in the F.E.L.A. The requirement there is that the person be injured "while employed" by the carrier. "While employed" covers a wider field than "arising out of and in the course of his employment." F.E.L.A. is a federal act and in such cases, "we are bound by Federal decisional law." Birmingham Southern Railroad Co. v. Ball, 271 Ala. 563, 126 So.2d 206.

In Louisville & Nashville Railroad Co. v. Crim, 273 Ala. 114, 136 So.2d 190, we held that there was some evidence that the defendant railroad had not furnished proper or sufficient equipment, a reasonably safe place to work and competent and sufficient help to do the work assigned to the employee and that the trial court did not err in refusing the request for the affirmative charge.

■ In the instant case, there was sufficient evidence to go to the jury on the question of negligence. That was the issue presented by the pleadings, and the issue submitted to the jury by the evidence and the charge of the court. We cannot, on appeal, take a narrower issue and confine our decision to whether the appellee's injuries "arose out of his employment." It is not disputed that appellee was employed by appellant, doing an assigned job in the line and scope of his employment and performing it under conditions that presented a question of appellant's negligence to the jury when he was injured.

In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, where there was evidence "tending to show that it was physically and mathematically impossible" for the employee to have been injured as plaintiff claimed, but still, the jury found in favor of plaintiff. The Supreme Court of the United States said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are

inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

In Rogers v. Missouri Pacific Rwy. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, it was said:

"Under this statute [F.E.L.A.] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. * * *

"The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence."

The affirmative charge is properly given in F.E.L.A. cases only when there is a complete absence of probative facts to support plaintiff's claim of negligence on the part of the railroad. Birmingham Southern Railroad Co. v. Ball, 271 Ala. 563, 126 So.2d 206; Louisville & Nashville Railroad Co. v. Cooke, 267 Ala. 424, 103 So.2d 791.

■ Here, there was sufficient evidence to present a jury question and the jury decided in favor of appellee. There is no

question in our minds that appellee was contributorily negligent in putting the loaded pistol in his shirt pocket and in bending or stooping while it was in that pocket; but contributory negligence of the injured employee does not bar recovery in F.E.L.A. cases, but damages may be diminished by reason of such negligence on his part. 45 U.S.C.A. § 54; Birmingham Southern Railroad Co. v. Ball, supra.

Rush, the employee-appellee, was doing the job to which he had been assigned, and there were some inferences from the evidence that the pistol was caused to fall from his pocket and fire the "rat shot" into his eyes because of the poor light, the cramped position in which he worked, bumping against the engine, the lack of adequate or better help with the heavy materials or some act of a fellow employee who was also helping in the unloading of the equipment.

There was no motion for a new trial and the weight of the evidence or the amount of the verdict is not in issue on this appeal.

This case was originally assigned to another member of the court and was recently reassigned to the author of this opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, COLEMAN, BLOODWORTH and McCALL, JJ., concur.

HARWOOD and MADDOX, JJ., dissent.

HARWOOD, Justice (dissenting).

I must dissent from the conclusion reached by the majority that the judgment in this appeal be affirmed.

As I interpret the opinion, it is based upon the premise that the entire question is to be resolved upon consideration of whether the evidence was sufficient to hold that the plaintiff's injuries resulted in whole or in part from the negligence of the railroad, a question for resolution by the jury under the evidence. This approach invites a conclusion on a basis which on analysis would appear to be irrelevant.

Liability under the F.E.L.A. arises, not from the injury, but from negligence causing the injury. Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239. In other words, there must be proximate and causal relation between the damages and the negligence of the employer railroad. Chesapeake etc. R. Co. v. Carnahan, 241 U.S. 241, 36 S.Ct. 594, 60 L.Ed. 979; Reynolds v. Atlantic C.L.R. Co., 251 Ala. 27, 36 So. 102.

While the F.E.L.A. deprives the employer of certain common law defenses, the employer's liability is still based upon negligence, for the F.E.L.A. is not a workmen's compensation law, and the employer is not an insurer. Reynolds v. Atlantic C.L.R. Co., supra; Hill v. Atlantic C.L.R. Co., 229 N.C. 236, 49 S.E.2d 481, reversed on other grounds, 336 U.S. 911, 69 S.Ct. 507, 93 L.Ed. 1075. Proximate cause is a proper inquiry in F.E.L.A. cases, and if the negligence alleged is not a proximate contributing cause of the injury, the allegation of negligence is not sustained. Alabama Great So. R. Co. v. Smith, 256 Ala. 220, 54 So.2d 453.

A violation of the F.E.L.A. alone is not a direct and proximate cause of injury merely because an injury to an employee would not have happened but for such act by the railroad, unless the act is a substantial as well as a natural factor in bringing about the injury. Johnson v. Chicago G. W. Ry. Co., 242 Minn. 130, 64 N.W.2d 372.

In respects to accidents to which F.E.L.A. is applicable, an employee cannot recover unless the failure to comply with Sections 1–10 of the Act is the proximate cause of the accident resulting in injury. If such failure merely creates a situational background in which an accident happens from other independent causes, there is no

liability on the part of the railroad. Anderson v. Baltimore and O. R. Co., 2 Cir., 89 F.2d 629.

As set out in the opinion of the majority, the plaintiff had owned the derringer about two weeks, and there was evidence to the effect that some of the railroad employees had carried guns as protection against snakes and tramps, though such was not a custom. The plaintiff did not have a permit for carrying the gun.

There is no evidence that plaintiff's employer had requested or required him to carry a pistol, or that it was the duty of the plaintiff to protect railroad property. We do not see how it can be said that the railroad was under a duty to anticipate that the plaintiff would place a derringer in his shirt pocket. The plaintiff was carrying the pistol for his personal use.

It is also to be noted that at the time the plaintiff was injured, the engine had completed its run and returned to Union Springs. The plaintiff had gone to his automobile to start the motor and turn on the heater in the automobile. It was then he took the pistol from the glove compartment of the automobile. He showed the derringer to the conductor, and after a short wait in a shed, boarded the engine. A fellow employee was on the engine. Under the conditions existing at the time of the accident, the need of the plaintiff for protection would appear questionable.

We agree that F.E.L.A. cases should not be decided on the basis of workmen's compensation laws. We strongly feel, however, that workmen's compensation cases dealing with the determination of whether an injury to a workman was one "arising out of" his employment, a phrase commonly found in workmen's compensation laws, furnishes a helpful analogy in determining whether an employee's injury was suffered "while he is employed," as the term appears in the F.E.L.A.

Because of a differing factual situation, we do not consider Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666, of any persuasive value in determination of the question now being considered. This for the reason that Bruce was employed as a watchman at the Southern Cotton Oil Company. He regularly carried a pistol in connection with his duties. The pistol with which Bruce was actually shot was owned by the oil company, but kept in the company office for use by the employees of the company if need arose. Bruce sometimes carried this pistol instead of his own. Thus, his handling of the pistol was in the course of his employment. As to whether Bruce was negligent in placing the pistol in reach of the young boy who caused it to fire, and whether such negligence was the proximate cause of Bruce's injury was not an issue in the case, it being a workmen's compensation case.

In the present case, it was not the duty of the plaintiff to carry a pistol. His doing so was his own personal act. A pistol is a dangerous instrumentality, and a person handling a firearm must exercise a high degree of care. American Ry. Express Co. v. Tait, 211 Ala. 348, 100 So. 328; Loreno v. Ross, 222 Ala. 567, 133 So. 251. Mr. Hamby, the conductor on the train testified there was no necessity for the plaintiff to have a pistol. The carrying of the pistol by the plaintiff was the sole, efficient, and proximate cause of the plaintiff's injury, independent of negligence, if any, on the part of the railroad. The employment of the plaintiff did not require his exposure to the risk of carrying a pistol in his shirt pocket, and the plaintiff's personal act in carrying the pistol was external to the course of his employment.

As stated in Southern Ry. Co. v. Smalley, 112 Ga.App. 471, 145 S.E.2d 708, cert. den. 384 U.S. 906, 86 S.Ct. 1342, 16 L.Ed.2d 359, rehearing denied 384 U.S. 958, 86 S.Ct. 1568, 16 L.Ed.2d 553, a F.E.L.A. case:

"Before the Federal Employers' Liability Act is applicable to a suit for damages brought by a railroad employee

**340**

against his employer, it is essential not only that the plaintiff was an employee of the defendant railroad engaged in the furtherance of interstate commerce but that such employee was engaged in activities incident to or an integral part of his employment at the time of the injury complained of. Quirk v. New York, C. & St. L. R. Co., 7 Cir., 189 F.2d 97; Atchison, T. & S. F. R. Co. v. Wottle, 10 Cir., 193 F.2d 628; Baum v. Baltimore & Ohio R. Co., 7 Cir., 256 F.2d 753.

"As stated in the Wottle case, supra, the Federal Employers' Liability Act covers only those acts which are necessarily incidental to actual work performed in interstate commerce, such as going to and from the actual place of work after reporting for duty, and temporary departure from the line or course of duty, but does not cover activities not necessarily incident to or an integral part of employment in interstate commerce, such as those undertaken for a private purpose and having no causal relationship with employment."

See also Lavender v. Illinois Cent. R. Co., 358 Mo. 1160, 219 S.W.2d 353, cert. den., 338 U.S. 822, 70 S.Ct. 67, 94 L.Ed. 499, wherein it was held that where two railroad employees, out of line of their duties, had engaged in horseplay with loaded pistols, resulting in the accidental shooting of one of the employees, the relationship of employer and employee was suspended as to such activity, even though the shooting occurred while the employees were at their regular place of employment under company orders.

In the fairly recent case of Mensen v. Baltimore and Ohio R. R. Co., 111 Ill.App. 2d 362, 250 N.E.2d 303, the plaintiff, a signal maintenance man for the defendant, used a truck supplied by the railroad in carrying out his duties. If tires were needed for the truck, the plaintiff was required to contact his supervisor for issuance of a requisition for their purchase. The plaintiff had made three written and

four oral requests of his supervisor for a requisition for new tubes for the truck tires. The requisitions were not issued. One of the tires, which had gone flat four days before, again went flat. While removing the flat tire, the truck fell from the jack and injured the plaintiff. The plaintiff brought an action based on the F.E.L.A. and was awarded damages of $103,000.00.

The railroad appealed contending the lower court erred in denying its motions for a directed verdict and for a judgment n. o. v.

The Appellate Court of Illinois reversed the judgment holding that plaintiff's duties required that he maintain the truck, and the injury could have as well happened while changing a new tire as an old one, and to hold the railroad liable it was necessary that there be evidence that negligence of the railroad played a part in causing the injury; that only in a philosophic sense did the existence of the flat tire play a part in producing the plaintiff's injuries, in that had the tire not gone flat there would be no occasion to change it.

The Supreme Court of the United States, with two of the Justices dissenting, denied plaintiff's petition for writ of certiorari on 17 March 1970. See 397 U.S. 980, 90 S.Ct. 1104, 25 L.Ed.2d 390.

It is our conclusion therefore that under the facts shown the plaintiff's injury must be deemed to have resulted solely and proximately from his own act in carrying the derringer, and not from negligence of the railroad; that such conduct was not within the scope of his duties, and removed him from the concept of being employed by the railroad in the aspect and meaning of Section 51, Title 45, found as part of F.E.L.A.

The lower court therefore erred in denying the appellant-railroad's request for the affirmative charge.

MADDOX, J., concurs.