This appeal is by Redwing Carriers, Inc., from a judgment of the Circuit Court of Montgomery County affirming an order of the Alabama Public Service Commission granting to R.C. Van Lines, Inc., a permit to operate as a contract motor carrier in intrastate commerce. We affirm.
R.C. Van Lines filed its application with the APSC seeking authority under the Motor Carrier Act of Alabama (Tit. 48, §§ 301 (1), et. seq., Code 1940) to operate as a contract carrier by motor vehicle in intrastate commerce over irregular routes, in the transportation of glue, adhesives, materials used in the manufacture of glue and adhesives, and chemicals, between the plant site and storage facilities of, or used by, Chembond Corporation in Covington County, Alabama, on the one hand, and on the other, all points and places in Alabama.
After notice, protests against R.C. Van Lines' application were filed by Ross Neely Express, Inc.; Miller Transportation, Inc.; and Redwing Carriers, Inc., all common carriers.
The APSC held a hearing on R.C. Van Lines' application but because a majority of the Commission did not hear the entire case, an examiner's report and recommended order was filed. Miller did not appear at the hearing to continue its protest.
In the report and recommended order, the examiner recommended:
 "* * * the Applicant be granted authority by the Commission to institute a new operation as a contract carrier by motor vehicle, under a continuing contract with Chembond Corporation, in intrastate commerce over irregular routes, in the transportation of:
 Glue and adhesives, and materials and chemicals used in the manufacture of glue and adhesives, in bulk, in tank vehicles, between River Falls, Alabama, on the one hand, and on the other, all points and places in Alabama."
Both Ross Neely and Redwing filed exceptions to the examiner's report and recommended order. In an order dated 6 October 1976, the APSC adopted the examiner's summary of evidence, agreed with the examiner's conclusion that the APSC should grant the authority as recommended, and made the following findings:
 "We find the supporting shipper, Chembond, has distinct and specialized transportation needs that it is not able to have satisfied from existing transportation services. Further, we find that the grant of this application will not result in the necessity of the protesting carrier's diminishing any service to the public. Therefore, we find that the grant of this application will be consistent with the public interest.
 "The Applicant initially carried his burden of proving this fitness to hold contract carrier authority. Protestants challenged this because there was evidence of prior unauthorized operations by the *Page 131 
Applicant. Nevertheless, we do not feel these unauthorized operations were such that would negate the showing that the Applicant is willing to conform to the provisions of the Motor Carrier Act and the rules and regulations of this commission.
 "Therefore, we find that the Applicant is fit, willing and able to properly perform the services of a contract carrier by motor vehicle and to conform to the provisions of the Motor Carrier Act of 1939, and the lawful requirements, rules and regulations of this Commission promulgated thereunder."
Concluding, the APSC granted and issued the authority as recommended by the examiner.
From that order, only Redwing filed an appeal to the Circuit Court of Montgomery County; there the court affirmed the order. Redwing appeals here from the judgment of affirmance.
It is well settled that an order of the APSC is taken as prima facie just and reasonable, Tit. 48, § 82, Code 1940. It may be set aside by the circuit court or by this court only if "`* * * the commission erred to the prejudice of appellant's substantial rights in its application of the law; or, the order, decision or award was procured by fraud or was based upon a finding of facts contrary to the substantial weight of the evidence. * * *'" Van Express, Inc. v. Bee Line Express,Inc., 347 So.2d 1353 (Ala. 1977). It is likewise well settled that we review the order of the APSC as if it were on direct appeal to us from the APSC without any presumption of correctness of the judgment of the circuit court. JeffersonTrucking Co. v. Alabama Public Service Commission,347 So.2d 372 (Ala. 1977).
The sole issue presented on this appeal is whether the APSC's order is supported by competent, substantial evidence of record. We answer yes and accordingly affirm.
We draw this conclusion on the basis that the evidence satisfies the requirements governing issuance of contract carrier permits as those requirements are stated in § 301 (11), Tit. 48, Code, 1940. Section 301 (11) provides in pertinent part:
 "* * * Subject to Section 301 (12) of this title, a permit shall be issued to any qualified applicant therefor, authorizing in whole or in part the operations covered by the application, if, after public hearing of the application, it appears from the application and the evidence in support thereof or from any hearing held thereon that the applicant is fit, willing and able to properly perform the service of a contract carrier by motor vehicle and to conform to the provisions of this article and the lawful requirements, rules and regulations of the commission thereunder, and that the proposed operation, to the extent authorized by the permit will be consistent with the public interest, otherwise such application shall be denied. * *" (Emphasis added)
The standards by which the APSC in a case of this kind is governed are: (1) the proposed operation to the extent authorized by the permit will be consistent with the public interest; and (2) the applicant is fit, willing and able to properly perform the service of a contract carrier by motor vehicle and will conform to the provisions of the statute and the lawful requirements, rules and regulations of the APSC thereunder. Alabama Public Service Commission v. ConsolidatedTransport Co., 286 Ala. 323, 239 So.2d 753 (1970); OsborneTruck Lines, Inc. v. Alabama Public Service Commission,284 Ala. 166, 223 So.2d 284 (1969); Alabama Public ServiceCommission v. Nunis, 252 Ala. 30, 39 So.2d 409 (1949).
The ancillary issues pertinent to a disposition of this appeal are:
(1) Was the grant of R.C. Van Lines' application "consistent with the public interest?"; and
(2) Is R.C. Van Lines, "Fit, willing and able, etc." to perform the proposed service?
 I "Consistent with the Public Interest" Alabama Public Service Commission v. Nunis, supra, is traditionally cited for the *Page 132 
interpretation of the captioned phrase. There, this court made the following comments:
 "Attention is called to the difference in the finding necessary for contract carriers, that is, `consistent with the public interest,' and for common carriers, that there must be a `certificate of public convenience and necessity'. Section 301 (8), Title 48 [Code 1940], supra.
 "A contract carrier can give preferential service, and is not limited to schedules or routes: a common carrier is thus bound. * * * This carrier cannot extend the preferential service nor other advantages of a contract carrier.
 "* * * It is not a question of whether the public needs this service, as when a common carrier seeks a permit, but whether such service would be detrimental to the public interest. It is said to be a form of private transportation. * *
* * * * * *
 "* * * We think this proposed service would be consistent with the public interest, unless it would probably depreciate materially the ability of the lone common carrier who may be equipped so to engage in serving the public, and who alone is protesting this application. * * *"
From that decision a two prong test for determining "consistent with the public interest" has evolved: a permit should be granted when a common carrier cannot extend the preferential service or other advantages of a contract carrier; and the granting of a permit will not tend to materially depreciate the ability of the protesting common carriers to serve the public. Alabama Public Service Commission v.Consolidated Transport Co., supra.
The APSC found, and the evidence supports such a finding, that Chembond has distinct and specialized transportation needs which it is not able to fulfill from existing transportation services. This preferential service is required because it is starting production of a chemical commodity at the River Falls plant called urea resin. Transportation of that chemical requires dedicated equipment which transports nothing else which would discolor or contaminate the white urea resin and thus make it unacceptable to Chembond's customers. Redwing, as a common carrier, could not dedicate such equipment to the exclusive use of Chembond. Urea resin goes through a screening procedure before it is loaded and the tanker trailer used to haul it must be free of foreign particulate matter. Evidence from Chembond was to the effect that equipment of Redwing had been rejected on occasion because it was not sufficiently clean. Further, the equipment is needed on an hour's notice and Redwing cannot assure timely supply of it from terminals located in Mobile and Montgomery. Drivers experienced in handling the problems of transporting substances with similar qualities to those of urea resin are needed. These will be provided by R.C. Van Lines while that has not always been the case with Redwing. Also, facilities for cleaning the equipment are important and cleaning facilities are maintained at the Chembond plant while Redwing does not have cleaning facilities at the plant site; its closest facility is at Montgomery, some distance away.
With reference to the second aspect of the test, the APSC found, and again there is supporting evidence in the record, that the grant of R.C. Van Lines' application will not result in diminishing the protesting carriers service to the public. As noted earlier, Ross Neely and Redwing were the only two remaining protestants to the application. Because Ross Neely had not been participating in this traffic, the examiner was of the opinion, and it logically follows, that Ross Neely will not lose business if the application is granted. However, Redwing argues that because it has handled traffic for Chembond in the past it will stand to lose revenue if the application is granted. Redwing claims it cannot afford a loss in revenue of sums totalling more than $53,000 annually and continue to give good service to the shipping and receiving public. *Page 133 
Redwing's argument ignores the essence of the decision inOsborne Truck Lines, Inc. v. Alabama Public Service Commission, supra, where this court said:
 "We will not undertake to establish any factual guidelines for guidance of the Commission controlling the issuance of contract permits, but suffice it to say, that when it appears that there is an existing plurality of common carriers who are willing, ready and able to provide with reasonable efficiency and promptness the service proposed by the applicant for a contract permit, the permit should not be granted, to the end that the financial status and physical assets of the common carriers may be protected against erosion and depletion. Want of such protection is inconsistent with public interest. * * * (Emphasis added)
The words emphasized above set forth the crux of this factor considered in a finding of "consistent with the public interest": "* * * to the end that the financial status and physical assets of the common carriers may be protected against erosion and depletion. * * *" The mere allegation that a common carrier will stand to lose revenue does not establish that its financial status and physical assets are subject to erosion and depletion. The language employed in Osborne contemplates evidence of the totality of the common carrier's financial condition. This includes gross receipts, net revenue, net profits, etc. For instance, suppose Redwing loses $53,000 in annual revenue as a result of the grant of this application; this fact standing alone sheds no light on the impact of that loss to its overall profitability and financial soundness.
Further, the APSC's evidential supported finding that Chembond had specialized transportation needs it could not fulfill from existing transportation services authorizes the conclusion that Redwing was not able to provide reasonably efficient and prompt service.
 II "Fit, Willing and Able, etc." (§ 301 (11), Tit. 48, Code 1940)
Finally, Redwing attacks R.C. Van Lines fitness to hold contract carrier authority. Redwing contends that prior unauthorized operations of R.C. Van Lines should preclude a finding that R.C. Van Lines is fit, willing and able, etc. The record shows R.C. Van Lines under its interstate authority had moved commodities manufactured in Covington County, Alabama, to various points in the state. R.C. Van Lines claimed those operations occurred because it was under a belief it was authorized to transport some commodities intrastate by its ICC temporary authority. The record reveals that after being advised the intrastate operations were illegal, R.C. Van Lines leased the equipment to the shippers and sought intrastate authority. Moreover, R.C. Van Lines represented at the APSC hearing its willingness to comply with the Motor Carrier Act, and rules and regulations of the APSC. The action of R.C. Van Lines, after being notified of the illegality of the instrastate operation, authorized the APSC to conclude there was good faith in the representation of R.C. Van Lines that it would adhere to the laws of this state. We find nothing offensive about those prior unauthorized operations which should preclude a finding by the APSC that R.C. Van Lines is "fit, willing and able, etc." to perform the proposed service.
To the contrary, we find an abundance of evidence in the record to support a finding of R.C. Van Lines' fitness, willingness and ability to perform the proposed service. R.C. Van Lines' financial statement shows third quarter 1975 profits of $21,618, and its balance sheet as of 30 September 1975, reflects total assets of $930,109.34. In 1975, R.C. Van Lines had gross revenues of $1,962,000. The evidence shows R.C. Van Lines has already invested $160,000 in equipment to provide service for Chembond. It consists of stainless steel trailers, insulated and specially equipped to handle adhesives; 1975 model trailers built to specifications required by Chembond. *Page 134 
R.C. Van Lines expressed its intention to provide service for Chembond through a terminal at the Chembond plant site. Evidence of R.C. Van Lines was that it had personnel qualified to hire and supervise the proper drivers to operate its equipment to transport Chembond's substances and the drivers to be used will be specially trained in handling adhesives. Further, that R.C. Van Lines will provide washing, cleaning and maintenance facilities at the Chembond plant site, and will be able to provide equipment promptly upon request.
Having found the APSC's order is supported by competent substantial evidence of record, the judgment of the circuit court sustaining the order of the APSC is due to be, and is affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.