These are appeals from an order of the Monroe County Circuit Court reversing the Alabama Public Service Commission's denial of Hornady Truck Lines, Inc.'s application for amendment of its Permit No. 166 and instructing the Commission to issue an order amending the permit in question to include the requested authority. We reverse.
Hornady under Permit No. 166 has authority to transport the following items as a contract carrier in intrastate commerce for the account of Arvin Industries, Inc.:
 (1) Steel in coils and flat sheet from Birmingham, Alabama; Gadsden, Alabama; and Alabama City, Alabama, to Monroeville, Alabama, returning any damaged or unaccepted shipments.
 (2) Scrap metal from Monroeville, Alabama, to Birmingham, Alabama; Gadsden, Alabama; and Alabama City, Alabama.
 (3) Steel in coils, flat sheet steel, steel tubing, automotive exhaust systems and component parts of automotive exhaust systems between Fayette, Alabama, and Monroeville, Alabama.
Arvin Industries' Automotive Division has plants in Fayette and Monroeville, Alabama, which are served by Hornady. The Fayette operation used wide core steel or coil steel to produce automotive exhaust systems, mufflers, pipes, flanges and other items. The Monroeville plant takes steel *Page 784 
slit in various sizes and makes exhaust pipe. To more fully utilize its steel slitter in Fayette, after the initial contractual relationship between Arvin and Hornady began, Arvin had coil steel shipped directly from Republic Steel in Gadsden where it was purchased to its Fayette plant where it slit its own steel for Monroeville rather than employing either Hanna Steel in Gadsden or Ferralloy in Birmingham to slit the steel and then transport it to Monroeville.
Hornady neither under its Permit No. 166 nor under its common carrier certificate had authority to move the steel from Gadsden to Fayette, although it served Arvin from Fayette to Monroeville and from Monroeville to Gadsden. Thus, on July 21, 1978, Hornady filed an application to extend its existing common carrier certificate to have transit of steel from Republic in Gadsden to all points in Alabama and to convert its contract carrier authority to common carrier authority. This application was later amended to add only the following authority to Hornady's contract carrier Permit No. 166:
 ". . . as a contract carrier, by motor vehicle, in intrastate commerce over irregular routes, in the transportation of steel sheets, plates, and coils from Gadsden, Alabama to Fayette, Alabama, for the account of Arvin Industries, Inc., . . ."
Notices of protest were filed by Gadsden Truck Line, Inc., Victory Freight Lines, Inc., Ross Neely Express, Inc., Arrow Truck Lines, Inc., and Vulcan Freight Lines, Inc. A hearing was held before an examiner and only Ross Neely appeared to oppose the amended application. After hearing testimony, because a majority of the commissioners did not hear the application in its entirety, the examiner submitted a written report and recommended order in which he recommended that the application be denied as it did not appear that proposed operation would be consistent with the public interest. Hornady filed exceptions to the examiner's report and Ross Neely filed replies to those exceptions.
After careful consideration of the entire record in this case, the Alabama Public Service Commission (APSC) determined that the examiner "fairly summarized the evidence presented in his report." They entered an order adopting his summary of the evidence and concurring with the examiner's conclusion that Hornady's proposed service was not consistent with the public interest.
Hornady appealed to the Monroe County Circuit Court. After receiving briefs from the parties and hearing oral arguments, the trial judge entered an order reversing the APSC and remanding Hornady's application to that body with instructions to issue an APSC order amending Permit No. 166 to include the additional contract carrier authority sought. Ross Neely and APSC appeal to this Court.
The issue presented for decision in the instant case is whether the APSC erred to the prejudice of Hornady's substantial rights in its application of the law and/or whether its order was based upon a finding of facts contrary to the substantial weight of the evidence. More specifically, as an ancillary issue, we are asked to determine whether the APSC erred in finding Hornady's proposed operation was not consistent with the public interest.
Appellate review of orders of the APSC both by a circuit court and by the Supreme Court of Alabama is governed by §37-1-124, Code 1975. Alabama Public Service Commission v.Redwing Carriers, Inc., 366 So.2d 1111 (Ala. 1979). That section provides in pertinent part:
 The commission's order shall be taken as prima facie just and reasonable. No new or additional evidence may be introduced in the circuit court, [except as to fraud or misconduct of some person engaged in the administration of this title and affecting the order, ruling or award appealed from,] but the court shall otherwise hear the case upon the certified record and shall set aside the order if the court finds that:
 (1) The commission erred to the prejudice of appellant's substantial rights in its application of the law; or *Page 785 
 (2) The order, decision or award was procured by fraud or was based upon a finding of facts contrary to the substantial weight of the evidence.
[Emphasis added.]
Our review of the commission's order is like that on a direct appeal, without any presumption as to the correctness of the judgment of the circuit court. Redwing Carriers v. AlabamaPublic Service Commission, 356 So.2d 129 (Ala. 1978); JeffersonTrucking Company v. Alabama Public Service Commission,347 So.2d 372 (Ala. 1977); Alabama Public Service Commission v.Consolidated Transport Company, 286 Ala. 333, 239 So.2d 763
(1970); Osborne Truck Lines v. Alabama Public ServiceCommission, 284 Ala. 166, 223 So.2d 284 (1969); Alabama PublicService Commission v. Decatur Transfer Storage, 257 Ala. 346,58 So.2d 887 (1952); Alabama Public Service Commission v.Nunis, 252 Ala. 30, 39 So.2d 409 (1949). This court has clearly stated that courts must guard against substituting their own judgments of findings of fact for the judgment of the APSC.Floyd Beasley Transfer Co. v. Alabama Public ServiceCommission, 276 Ala. 130, 159 So.2d 833 (1963). Where the evidence is heard ore tenus by a hearing examiner, the presumption of correctness which is normally accorded the APSC's order is accorded to the examiner's findings of fact; and if the APSC adopts the examiner's findings of fact, the APSC order is entitled to the same presumption. Alabama PublicService Commission v. Redwing Carriers, Inc., supra.
In examining a contract carrier case, the APSC is required to determine that: (1) the proposed operation sought to be authorized by the permit will be consistent with the public interest; and (2) the applicant is fit, willing and able to properly perform the service of a contract carrier by motor vehicle and will conform to the statutory provisions and the lawful rules, requirements, and regulations of the APSC thereunder. Section 37-3-13, Code 1975; Redwing Carriers v.Alabama Public Service Commission, supra; Alabama PublicService Commission v. Consolidated Transport Company, supra;Osborne Truck Lines v. Alabama Public Service Commission,supra; Alabama Public Service Commission v. Decatur Transfer Storage, supra; Alabama Public Service v. Nunis, supra. The "consistent with the public interest" requirement, which is the crux of the controversy in this case, as the parties do not dispute that Hornady meets the second requirement, has been determined by the application of the following two-pronged test: a contract carrier permit should be issued when 1) a common carrier cannot extend the preferential service or other advantages of a contract carrier; and 2) the granting of such a permit will not tend to materially depreciate the ability of the protesting common carriers to serve the public. RedwingCarriers v. Alabama Public Service Commission, supra; AlabamaPublic Service Commission v. Consolidated Transport Co., supra.
The hearing examiner, in applying the first requirement of the two-pronged test, heard testimony and recorded it in his findings of fact indicating that no specific equipment was to be dedicated to the service of Arvin for the transit of coil steel from Republic Steel in Gadsden to Fayette. Hornady proposed to dispatch truck trailers through its central dispatch in Monroeville for the loads rather than constantly using equipment from its Ragland terminal, which is twenty-five miles from Gadsden. William Grant, assistant to the president of Hornady, testified that very little Republic Steel material was hauled by the Ragland facility and most of the Ragland material was hauled through central dispatch. Grant also stated that no special equipment was required to haul the steel; regular flatbed trailers were to be used. No special handling was needed in the transportation of the steel and both the applicant and the protestant had previously hauled steel for Arvin.
Fredrick Smith, production control general foreman of Arvin's Fayette plant, testified that they had had some delay problems with Ross Neely's transportation of steel in *Page 786 
the past. The hearing examiner observed in his findings, however, that a weekend was involved in all of the transit delay situations and overnight service shipments were allowable. Smith also stated on cross-examination that the Fayette plant has had very few emergency situations where they needed steel on a moment's notice, that they have had no other problems with Ross Neely, and that the contract carrier rates to be charged by Hornady would be no different from the Ross Neely rates.
Officers of Arvin and Hornady asserted at the hearing that preferential service was to be rendered in the round-robin service or triangular movement from Gadsden to Fayette, then to Monroeville, and back to Gadsden. The reason for such service was said to be to save Arvin money in outside steel slitting costs and Hornady money in fuel costs.
The hearing examiner found that there was no preferential service proposed to be rendered by the contract carrier, Hornady. He stated that the fact that Hornady would save money did not indicate any preferential service rendered to Arvin and the round-robin service was merely a convenience. He further concluded that:
 Another problem here is Mr. Grant stated that equipment would be dispatched from throughout the state with very little of the Ragland facility serving Republic Steel. This situation could involve deadhead mileage for some of Hornady's equipment as in the past. On the other hand, Mr. John Foster from Ross Neely testified that their facility, which serves Republic, adjoins the property of Republic.
 The testimony of Mr. Smith is that the rates charged by Hornady would be the same as those of Ross Neely, and both Hornady and Ross Neely utilize the same equipment for steel movements and both have experience with this commodity: Therefore, no other real advantages exist.
Our examination of the record, comprised of the testimony and the exhibits before the hearing examiner, convinces us that the examiner's finding that no preferential service was to be rendered by Hornady was correct. Thus, the requirement of the first part of the two-pronged test was not met in Hornady's application.
Compliance with the second part of the test required a determination that allowing the permit would not tend to materially depreciate Ross Neely's ability to serve the public. Testimony was presented to the hearing examiner which reflected that Ross Neely had 75 flatbed trailers at its disposal and had intrastate authority to haul general commodities between all points and places within a radius of 125 miles of Birmingham, although it could not directly serve Monroeville. Ross Neely has served Republic Steel in Gadsden for seventeen years. Its Gadsden facility adjoins Republic and relies heavily on Republic for traffic. It makes 40 to 50 hauls a week for Republic. In September, 1978, this traffic amounted to 5,504,055 pounds. During August, September, and October of that year it transported 451,480 pounds from Republic to Arvin's Fayette plant. John Foster, Ross Neely's traffic manager, testified that the company is primarily a small shipment distributor type carrier which serves small rural communities with small shipments. It loses money on approximately 69% of its shipments and makes its money on large truckload shipments such as those from Republic to Arvin. Ross Neely's operating ratio for the first eight months of 1978 was 100.4, indicating that Ross Neely was operating at a loss. Foster further testified if Ross Neely lost these full truckload shipments, service provided to rural areas around Fayette could be cut back and/or otherwise hindered.
We conclude from our examination of the evidence that Hornady's proposed service as a contract carrier from Republic to Arvin in Fayette would materially downgrade the ability of Ross Neely to serve as a common carrier pursuant to its certificate of convenience and necessity. This Court stated inOsborne Truck Lines, Inc. v. Alabama Public Service Commission,supra: *Page 787 
 We might further comment that any erosion or impairment of the financial ability of the common carriers to perform by taking away from them lucrative business and giving it to a contract carrier, particularly to enable the customer to meet competition, or possibly to gain some advantage, is not consistent with public interest. Such public interest as related to the business world is dependent on an adequate and efficient motorized common carrier system which should not be potentially weakened or impaired by this issuance of contract carrier permits that have a tendency to decrease the volume and remuneration of such carriers that is needed to sustain efficient common carrier service. [284 Ala. at 170, 223 So.2d at 288.]
The APSC correctly determined that Hornady's application for amendment of its Permit No. 166 was not consistent with the public interest. That order was not based on a finding of facts contrary to the substantial weight of the evidence nor did the APSC err to the prejudice of Hornady's substantial rights in its application of the law.
This case is reversed and remanded with instructions to enter an order affirming the Alabama Public Service Commission's order.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and ALMON, EMBRY and BEATTY, JJ., concur.